No._____

IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

SIEGRIST BUILDERS, INC., an Illinois Corporation;
CHRISTIAN COUNTY INTEGRATED COMMUNITY SERVICES,
an Illinois General Not-for-Profit Corporation;
SARA KNOTT and, ASHLEY BURNETT;
Plaintiffs,

vs.

CITY OF TAYLORVILLE, ILLINOIS,
Defendant.

COMPLAINT
PLAINTIFFS DEMAND TRIAL BY JURY

*Nature of the Action*

1.  This action is brought by Siegrist Builders, Inc. (SIEGRIST), Christian County Integrated Community Services (CCICS), and SARA KNOTT (KNOTT), and ASHLEY BURNETT (BURNETT) , (collectively Plaintiffs) seeking declaratory and injunctive relief, mandamus, damages and attorney's fees and costs against the City of Taylorville, Illinois (TAYLORVILLE) for its unlawful and discriminatory refusal to permit the construction of a certain 18-unit single-family residential development known as Hathaway Homes (the Project) as would provide affordable housing for low and moderate income persons and families, and disabled persons and families.

*Jurisdiction & Venue*

2. This Court has subject matter jurisdiction of this action by and pursuant to 28 USC § 1331, 28 USC § 1343, 42 USC § 3613, 42 U.S.C. 1983 and 42 U.S.C. 1988. Jurisdiction for declaratory relief is provided by 28 U.S.C. § 2201 & 2202. This Court has supplemental jurisdiction to hear and decide the supplemental state-law claim by and pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the United States District Court for the Central District of Illinois, Springfield Division as all of the parties, and all of the acts and omissions complained of, occurred or were omitted at and within that district. 28 U.S.C. § 1391.

*Parties*

4. SIEGRIST is an Illinois Corporation having its principal offices located at Taylorville, Christian County, Illinois; and which is an experienced housing developer engaged in the business, *inter alia*, of developing and constructing affordable housing for low and moderate income persons and families, including minorities and disabled persons, in and about Christian County, Illinois.

5. CCICS is an Illinois general not-for-profit corporation that provides affordable housing for low and moderate income persons and families, including minorities and disabled persons, in and about Christian County, Illinois, including TAYLORVILLE; and which owns an exclusive "option" to purchase the real estate on which the Project is to be developed and constructed. CCICS has an interest in making suitable affordable housing available to low and moderate income persons and families, and persons with disabilities, in in TAYLORVILLE, where the need for such housing is demonstrated and identified by its Comprehensive Plan.

6. KNOTT is a female adult resident of Christian County, Illinois, who has legal custody of her four minor children, and who, because of her low to moderate income, qualifies for

and will benefit from affordable housing as the same is provided by CCICS. She, in fact, has placed her name on the waiting list for such housing, and desires to reside at the Project once the same is constructed.

7.  BURNETT is a female adult resident of Christian County, Illinois who has legal custody of her two minor children, who is disabled, and who, because of low to moderate income, qualifies for affordable housing as the same is provided by CCICS. She, in fact, has placed her name on the waiting list for such housing, and desires to reside at the Project once the same is constructed.

8.  TAYLORVILLE is a municipal corporation organized and existing by and pursuant to the laws of the State of Illinois, and governed by a City Council consisting of eight alderman and mayor.

*Statutory Framework*

9.  42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, * * * .

10. 42 U.S.C. § 1983(b) provides as follows:

In any action or proceeding to enforce a provision of * * * § 1983 * * * of this title, * * * the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs * * * .

11. The Fair Housing Act ("FHA") provides that "it shall be unlawful –

**(b)** To discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection

therewith, because of race, color, religion, sex, familial status, or national origin" (42 U.S.C. § 3604(b);

and,

**"(f)(1)** To discriminate in the rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

****

**(B)** a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available (42 U.S.C. § 3604(f)(1)(B)).

**(2)** To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

****

**(B)** a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available" (42 U.S.C. § 3604(f)(2)(B)).

12.     The FHA further provides that "discrimination includes—

**(B)** a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling" ((42 U.S.C. § 3604(f)(3)(B)).

13.     The Americans With Disabilities Act ("ADA") provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

14.     The Project is designed to provide affordable rental housing to low and middle income persons and families, without regard to race, color, religion, sex, familial status, or national origin and to persons with disabilities. Such persons and families are therefore the intended beneficiaries of the FHA and the ADA.

*Factual Background*

15. The site for the Project was and is located entirely at and within the corporate limits of TAYLORVILLE on approximately 6.28 acres owned in fee by Louis J. Sloan and Rebecca L. Sloan. The site is zoned R-1 One-Family/Two-Family Residential, the proper zoning classification for the Project as proposed. The subject property was, and is presently, unimproved farm land situated adjacent immediately to the west of a residential area of a few small single family homes, and immediately north of a commercial area including a VFW. There is no present development of the lands immediately to the north or the west of the subject property.

16. On or about December 30, 2011, CCICS acquired an option for the purchase of the real property upon which the Project is proposed to be developed from Louis J. Sloan and Rebecca L. Sloan. The purchase price of the said real property is $139,000.00; and the option is presently extended until June 30, 2013. CCICS has thus far expended $1,250.00 in securing and extending the option to purchase the subject real estate.

17. During and after December 2011, CCICS and SIEGRIST as co-developers began the process of developing the Project to provide affordable housing for persons and families in and about Christian County, Illinois, without regard to race, color, religion, sex, familial status, or national origin and for disabled persons. The Project is intended to address a specific need in TAYLORVILLE, as identified by its "Comprehensive Plan", for affordable housing of its residents having low and moderate income levels.

18. CCICS and SIEGRIST had developed detailed and specific plans for the Project. The Project as first planned was to consist of 22 duplex residences for occupancy by families and persons of low to moderate income who are capable of living independently. Of the twen-

ty-two (22) units, fourteen (14) were to have two (2) bedrooms, eight (8) were to have three bedrooms, and three (3) were designated as disabled accessible.

19. On or about May 25, 2012 and June 14, 2012, CCICS and Louis J. Sloan and Rebecca L. Sloan petitioned TAYLORVILLE for the annexation of the above described Project site as required by the Illinois Housing Development Authority ("IHDA") as a condition to fund the Project with tax credits. On July 2, 2012, at a regular meeting of the TAYLORVILLE City Council, the purpose for the proposed annexation was described to the City Council, and an ordinance approving the same was duly approved by a 6-1 vote.

20. On or about October 11, 2012, IHDA committed to award tax credits to CCICS in the sum of $710,000.00 in order to fund the Project. SIEGRIST paid IHDA $63,350.00 as a commitment fee in consideration of such award.

21. Thereafter, at the request of TAYLORVILLE's mayor and certain council members, SIEGRIST and CCICS agreed to modify the Project to accommodate the development of eighteen (18) single-family rental residences with attached garages in place of the duplex development as previously proposed. Of the eighteen units, eleven (11) will have two (2) bedrooms, seven (7) will have three bedrooms, and three (3) will be disabled accessible.

22. According to TAYLORVILLE's City Code, SIEGRIST and CCICS were then required to fulfill the terms and conditions of TAYLORVILLE's Subdivision Ordinance to continue to develop the Project. Such terms and conditions required the approval first by the TAYLORVILLE Plan Commission and then by the TAYLORVILLE City Council of a "Location & Sketch Map" and subsequently the Preliminary Plan", for the Project. SIEGRIST and CCICS are ready, willing and able to proceed with the Project if and when such approval is given. KNOTT and BURNETT are ready,

willing and able to live at the Project if and when it is completed.  Without TAYLORVILLE's approval of the Location and Sketch Map and the Preliminary Plan, the Project could not proceed to be developed.

23.     TAYLORVILLE's Subdivision Ordinance provides that the Plan Commission *shall* "make a recommendation to the city council with respect to the suitability of the site and the proposed layout" (the "Location & Sketch Map"); and that upon the approval of the Location & Sketch Map by its Plan Commission, "the city council *shall*, at its next regularly scheduled council meeting, approve or disapprove the location and sketch maps based on the suitability criteria outlined in section 11-2-3" of its Subdivision Ordinance.  A true and correct copy of the section 11-2-3 of the aforementioned Subdivision Ordinance is appended hereto as Exhibit A and incorporated by reference herein.

24.     TAYLORVILLE's Subdivision Ordinance further provides that the City Council *shall*, "not later than the second regularly scheduled meeting after its receipt of the prints of the Preliminary Plan recommending approval or disapproval by the Plan Commission and of the minutes of the Plan Commission meetings considering the Preliminary Plan", consider approval or disapproval of the Preliminary Plan.  A true and correct copy of section 11-3-2 through 11-3-5 of its Subdivision Ordinance is appended hereto as Exhibit B and incorporated by reference herein.

25.     On January 22, 2013, the Plan Commission approved the Location & Sketch Map and the Preliminary Plan by a 6-0 vote, specifically finding that the same fully complied with the applicable provisions of TAYLORVILLE's Subdivision Ordinance.

26. Prior to the presentation of the Location & Sketch Map and Preliminary Plan for the Project to the TAYLORVILLE City Council, there was public opposition to the approval of the Project by anonymous letters and letters to the editor published in the local newspaper; by a petition signed by number of various persons most, if not all, of whom, did not live near the proposed development; and by an email sent to each of the council members by the wife of the acting chair of the Plan Commission, all of which asserted that a development supporting persons and families of low to moderate income should not be approved in at the proposed site of the Project as alleged in this Complaint.

27. On January 22, 2013, at the next regularly scheduled meeting of the TAYLORVILLE City Council, the approval of the Plan Commission's recommendation in respect to the Location & Sketch Map was called for consideration.  The Council commented extensively on the nature and extent of the public opposition to the development, the need for a privately funded (as opposed to publically funded) development at the same location, and a number of other issues that had nothing what-so-ever to do with the matters and issues required to be considered by the Council as provided by the aforementioned Subdivision Ordinance.  The Council thereafter rejected the Plan Commission's recommendation by a vote of 1-6.  The minutes of the Council's meeting assert that "[t]he majority of the Council were concerned about the impact to the City's infrastructure and school system a Project of this sort would have." No other reason was stated for the rejection of the Plan Commission recommendation, nor was reference made to section 11-2-3 of TAYLORVILLE's Subdivision Ordinance.

28. The Location & Sketch Map was in fact rejected by TAYLORVILLE's City Council despite the fact that:

A. The real property on which the development is to be constructed was annexed into, and zoned by, TAYLORVILLE specifically to accommodate such development;

B. the Project is a single-family residential development and the real estate on which the development is to be constructed is R-1 for single-family uses;

C. Neither SIEGRIST nor CCICS have sought any zoning change or variance; and,

D. The Location and Sketch Map and Preliminary Plan for the Project met all of the criteria for such developments as required by TAYLORVILLE's Subdivision Ordinance.

29. Thereafter the City Council met on February 4 and February 19, 2013, without taking any action in respect to the Plan Commission's recommendation for the approval of either the aforementioned Location & Sketch Map or Preliminary Plan.

30. At the regular City Council meeting on Monday March 4, 2013, the Council acted to "renew the motion to accept the recommendation of the Plan Commission" to approve the Location & Sketch Map. After discussion primarily concerned with the likelihood of an adverse result in litigation resulting from the earlier denial, the Council reversed its earlier position and approved the Plan Commission's recommendation for the approval of the Location & Sketch Map. The matter was referred back to the Plan Commission for the presentation of its recommendation for the approval of the Preliminary Plan.

31. At the next regular meeting of the City Council on March 18, 2013, the approval of the Plan Commission's recommendation for the approval of the Preliminary Plan was motioned and duly seconded. Before any discussion was heard in respect to the same, Alderman Dorchinez suggested that the Council needed a "second opinion" in respect to the liability issues raised and discussed at the meeting of March 4, 2013. After considerable discussion solely

concerning that issue, the Plan Commission's recommendation for the approval of the Preliminary Plan was "tabled." No further action in respect to such recommendation has been taken since that time, and none is anticipated.

32. The TAYLORVILLE City Council initially rejected the recommendation of the Plan Commission for the approval of the Project's Location & Sketch Map for the reason that the development would provide affordable housing to low and middle income persons and families. Such reasoning is evident from the nature of the discussion had during the course of the Council's consideration of the Plan Commission's recommendation, and the fact that the Plan Commission specifically found that all of the requirements of section 11-2-3 of TAYLORVILLE's Subdivision Ordinance were satisfied by the Location & Sketch Map and Preliminary Plan.

33. The TAYLORVILLE City Council subsequently "tabled" consideration of the recommendation of the Plan Commission for the approval of the Project's Preliminary Plan for the same reasons. Such action prevented the further consideration of the matter within the time periods as prescribed by the Subdivision Ordinance, and effectively denied Plaintiffs SIEGRIST and CCICS the right and opportunity to timely proceed with the development of the Project as proposed and denied KNOTT and BURNETT the opportunity to benefit from the affordable housing that would be constructed.

34. TAYLORVILLE's opposition to allowing the development of a housing project in which persons with low and moderate incomes, such as KNOTT, and persons with disabilities, such as BURNETT, would reside, was a substantial motiving factor in TAYLORVILLE's refusal to approve the Preliminary Plan for the Project so that the development of the Project could proceed.

35. CCICS, has made a substantial change in its position in reliance on TAYLORVILLE's approval of their petition for annexation and in compliance with all of the terms and conditions of TAYLORVILLE's Subdivision Ordinance, and it therefore has a vested right to use the property upon which it owns an option to purchase in the lawful manner as proposed.

*Claims*

*Count I – Violation of Fair Housing Act*

36. Plaintiffs are individuals and entities that are protected from illegal discrimination in housing under the federal Fair Housing Act, 42 U.S.C. §§3601 *et seq.*

37. The actions of TAYLORVILLE, in tabling the vote on the Preliminary Plan as alleged in this Complaint, constitute illegal discrimination in housing, in violation of the provisions of the federal Fair Housing Act.

38. TAYLORVILLE was aware and intended, at the time that it failed and refused to approve the Plan Commission's recommendation to permit the approval of the Preliminary Plan as alleged in this Complaint, that its actions would deny prospective tenants of the Project, including KNOTT and BURNETT, of the affordable housing to which they were entitled.

39. The actions of TAYLORVILLE violating the federal FHA as complained of in this Complaint have and will cause injury to Plaintiffs in one or more of the following respects, thereby making Plaintiffs aggrieved persons under the federal Fair Housing Act:

A. KNOTT and BURNETT have been unlawfully discriminated against in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status in violation of 42 U.S.C. § 3604(b) and 42 U.S.C. § 3604(f)(1)(B), by reason of TAYLORVILLE's failure and refusal to permit the develop-

ment of the Project and as a direct result of that unlawful discrimination KNOTT and BURNETT have been unlawfully denied the opportunity of have affordable housing that the Project would provide to them and to their children.

    B.    SIEGRIST and CCICS have been unlawfully discriminated against in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, in violation of 42 U.S.C. § 3604(b) and 42 U.S.C. § 3604(f)(1)(B), by reason of TAYLORVILLE's failure and refusal to approve the Plan Commission's recommendation to permit the approval of the Preliminary Plan for the Project as alleged in this Complaint   In that regard:

    i.    SIEGRIST, has and will suffer injuries and damages because of TAYLORVILLE's unlawful discriminatory conduct in one or more of the following respects:

        a.    It will suffer loss occasioned by virtue of both (i) the costs and expenses it has thus far incurred and expended to obtain TAYLORVILLE's approval of the Project, and (ii) by virtue of the costs and expenses it has thus far incurred and expended to obtain IHDA'S approval of the Project, to date totaling approximately $339,286.00;

        b.    It will be harmed by virtue of any increase in construction costs that are likely to occur during the delay in the commencement of the Project;

        c.    The delay in the commencement of the Project will interfere with funding which it previously sought and obtained from IHDA, and which loss of funding will prevent the development of the Project; and/or,

      d.    It will be prevented from constructing the Project which will cost it substantial profits it would have otherwise earned.

ii.    CCICS is and will suffer injuries and damages because of TAYLORVILLE's unlawful discriminatory conduct in one or more of the following respects:

      a.    It will suffer loss occasioned by virtue of the costs and expenses it has thus far incurred and expended to obtain various approvals as required for the Project;

      b.    The delay in the commencement of the Project will interfere with funding which it previously sought and obtained from IHDA, which loss of funding and which loss of funding will prevent the development of the Project;

      c.    The termination of the Project and loss of the funding, previously sought and obtained from IHDA, will cause CCICS to be penalized by IHDA for and during the next three years in the scoring of any applications that CCICS makes for other or future developments;

      d.    It will be prevented from developing, managing and operating the Project which will cost it substantial profits it would have otherwise earned.

*Count II – Violation of Americans With Disabilities Act*

40.    TAYLORVILLE is a public entity subject to the requirements of Title II of the ADA.

41.    Plaintiffs CCICS and BURNETT are individuals and entities that are protected from illegal discrimination in housing under the federal ADA, 42 U.S.C. §§12131 *et seq.*

42.    TAYLORVILLE was aware and intended, at the time that it failed and refused to approve the Plan Commission's recommendation to permit the approval of the Preliminary Plan

as alleged in this Complaint, that its actions would deny prospective tenants of the Project, including BURNETT, of the affordable housing to which they were entitled.

43. TAYLORVILLE's opposition to allowing the development of a housing project in which persons with disabilities, such as BURNETT, would reside, was a substantial motiving factor in TAYLORVILLE's failure and refusal to approve the Plan Commission's recommendation to permit the approval of the Preliminary Plan as alleged in this Complaint.

44. The actions of TAYLORVILLE in tabling the vote on the Preliminary Plan, as alleged in this Complaint, constitutes illegal discrimination in housing against persons with disabilities, in violation of the provisions of the federal ADA.

45. BURNETT, because of her affliction with impairments that substantially impact her major life activities, is a "qualified" individual "with a disability", and she is therefore protected against discrimination by public entities by and pursuant to 42 U.S.C. § 12131, *et seq*. and the FHA.

46. CCICS is, by virtue of its intention to develop and construct the Project as described in this Complaint, associated with the prospective tenants of the Project, including BURNETT.

47. The actions of TAYLORVILLE violating the federal Americans With Disabilities Act, as complained of in this Complaint have and will cause injury to Plaintiffs BURNETT and CCICS in one or more of the following respects, thereby making Plaintiffs protected and aggrieved persons under the federal Americans With Disabilities Act:

A. BURNETT is and will be unlawfully denied the affordable housing to which she is entitled because she is a disabled person.

    B.    SIEGRIST and CCICS are and will be unlawfully denied the ability to construct the Project on the subject property.

    C.    SIEGRIST, is and will suffer injuries and damages because of TAYLORVILLE's unlawful discriminatory conduct in one or more of the following respects:

    i.    It will suffer loss occasioned by virtue of both (i) the costs and expenses it has thus far incurred and expended to obtain TAYLORVILLE's approval of the Project, and (ii) by virtue of the costs and expenses it has thus far incurred and expended to obtain IHDA'S approval of the Project, to date totaling approximately $339,286.00;

    ii.    It will be harmed by virtue of any increase in construction costs that are likely to occur during the delay in the commencement of the Project;

    iii.    The delay in the commencement of the Project will interfere with funding which it previously sought and obtained from IHDA, and which loss of funding will prevent the development of the Project; and/or,

    iv.    It will be prevented from constructing the Project which will cost it substantial profits it would have otherwise earned.

    D.    CCICS is and will suffer injuries and damages because of TAYLORVILLE's unlawful discriminatory conduct in one or more of the following respects:

    i.    It will suffer loss occasioned by virtue of the costs and expenses it has thus far incurred and expended to obtain various approvals as required for the Project;

    ii.      The delay in the commencement of the Project will interfere with funding which it previously sought and obtained from IHDA, which loss of funding and which loss of funding will prevent the development of the Project;

    iii.     The termination of the Project and loss of the funding, previously sought and obtained from IHDA, will cause CCICS to be penalized by IHDA for and during the next three years in the scoring of any applications that CCICS makes for other or future developments;

    iv.     It will be prevented from developing, managing and operating the Project which will cost it substantial profits it would have otherwise earned.

*Count III – Illinois Law - Mandamus*

48.    By reason of the powers vested in the TAYLORVILLE City Council by its the Subdivision Ordinance, and by reason of the anti-discrimination provisions in the FHA and the ADA, TAYLORVILLE's City Council had a duty to exercise its discretion with regard to the approval or disapproval of the Preliminary Plan on a basis that was not motivated by an intent to discriminate against the Project because of the kind of residents who the Project was intended to benefit, being low and moderate income persons and families and persons with disabilities.

49.    TAYLORVILLE's refusal to properly exercise its discretion to approve the Preliminary Plan, as alleged in this Complaint, was purposefully intended to put an end to the Project, and the tabling of the motion to vote on the Preliminary Plan constituted a *de facto* disapproval of the Preliminary Plan with the intention to discriminate against KNOTT, BURNETT, SIEGRIST, and CCICS because of the kind of residents who the Project was intended to benefit, being low and moderate income persons and families and persons with disabilities.

50. TAYLORVILLE's refusal to approve its Plan Commission's recommendation for the approval of the Preliminary Plan for the Project therefore constitutes the exercise of discretionary power with manifest injustice or a palpable abuse of discretion.

51. Plaintiffs, SIEGRIST and CCICS are entitled to a writ of mandamus directing the TAYLORVILLE City Council to approve or disapprove the Preliminary Plan for the Project solely on the basis of the criteria for such Projects as set forth in TAYLORVILLE's Subdivision Ordinance, and without any intent to discriminate against the Project because of the kind of residents who the Project was intended to benefit, being low and moderate income persons and families and persons with disabilities.

*Count IV – Illinois Law – Injunctive Relief*

52. Plaintiffs are likely to succeed on the merits of their claim that Defendant has violated the Fair Housing Act by failing to approve the recommendation of its Plan Commission to approve the Preliminary Plan so as to allow the continued development of the Project to provide affordable housing for low and moderate income persons and families, and persons with disabilities, and the will integrate such persons into the broader residential community of TAYLORVILLE.  If injunctive relief is granted it would remove the barrier to the development of the Project caused by TAYLORVILLE's actions as alleged in this Complaint.

53. Plaintiffs will suffer irreparable harm in the absence of preliminary and permanent injunctive relief because funding for the Project is conditioned upon timely acquisition of permits allowing the construction of the Project as can only occur upon the approval of the Preliminary Plan; and, further delay will jeopardize the entire Project, leaving the Plaintiffs without

long-term affordable housing and the benefits and profits they would otherwise have accrued because of the development and construction of the Project.

54. Defendant will not be harmed if the requested injunctive relief is granted, since Defendant will not bear any financial or administrative burden if the requested accommodation is granted, and because granting the requested accommodation will not alter the existing zoning scheme or the purpose of the Zoning and Subdivision Ordinances.

55. The public interest will be served by granting preliminary and permanent injunctive relief in this matter as without the same TAYLORVILLE will continue to discriminate against low and moderate income persons and families, and including minorities, and disabled persons and families in the provision and availability of affordable housing, and as the Project is not tax exempt, it would contribute more to TAYLORVILLE's tax rolls than the vacant property that now exists at the proposed Project site.

*Prayer for Relief*

56. In consideration of the foregoing the Plaintiffs pray that this Court enter its Order finding and declaring that TAYLORVILLE violated the FHA, ADA and Illinois law; and,

A. Mandating, ordering and directing TAYLORVILLE to approve the Preliminary Plan for the Project;

B. Enjoining TAYLORVILLE from further interfering with the approval and construction of the Project both temporarily during the pendency of this matter and permanently thereafter.

C. Awarding compensatory damages in amount sufficient to compensate them for their respective losses occasioned by TAYLORVILLE's unlawful conduct;

D. Awarding punitive/exemplary damages in amount sufficient to deter TAYLORVILLE's further unlawful conduct;

E. Awarding their attorney's fees and costs incurred and accrued in consideration of their prosecution of this matter; and,

F. Granting any and all such other and further or different relief as this Court may deem equitable and proper.

BY: /s/ Edward T. Graham, Jr.
Bar Number 6182788
Attorney for Plaintiffs
BEAVERS, GRAHAM & CALVERT
221 West Main Cross Street
Post Office Box 320
Taylorville, Illinois 62568
Telephone: 217/824-3341
FAX: 217/824-3842
email: etg@beaversandgraham.com

BY: /s/ Stanley N. Wasser
Bar Number 2947307
Attorney for Plaintiffs
FELDMAN, WASSER, DRAPER & COX
1307 South 7th Street
Post Office Box 2418
Springfield, Illinois 62703
Telephone: 217/541-3403
FAX: 217/544-1593
email: swasser@feldman-wasser.com